IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


UNITED STATES OF AMERICA                         PLAINTIFF/RESPONDENT


              v.              CRIMINAL NO. 10-50110-003


JUAN SANCHEZ-SANCHEZ                             DEFENDANT/MOVANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On February 27, 2012, the Defendant/Movant Juan Sanchez-Sanchez (hereinafter "Defendant") filed a 28 U.S.C. § 2255 motion.  (Doc. 174).  The Government filed a Response on April 10, 2012.  (Doc. 181).  Defendant filed a Reply on April 30, 2012.  (Doc. 182).  The matter is before the undersigned for issuance of a Report and Recommendation and is now ripe for consideration.

**Background**

On January 13, 2011, Defendant was named in one count of a four-count Second Superseding Indictment filed in the United States District Court for the Western District of Arkansas.  (Doc. 62).  Count One charged Defendant with conspiring to distribute more than 50 grams of a mixture or substance containing methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and Title 21 U.S.C. § 846.

AO72A
(Rev. 8/82)

On April 12, 2011, a pretrial conference was conducted and the case then proceeded to trial, with a jury being selected and the trial set to begin the following morning.  On the morning of April 13, 2011, counsel for the Government and the Defendant advised the Court that they had entered into a Plea Agreement.  Pursuant to the written Plea Agreement, Defendant waived indictment and pled guilty to an Information charging him with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 (a) and 846.  (Docs. 111, 112, 115).  On August 4, 2011, Defendant was sentenced to 240 months imprisonment, 5 years supervised release, a $25,000.00 fine, and a $100 special assessment.  (Doc. 136).

On August 18, 2011, Defendant filed a Notice of Appeal. (Doc. 142).  On appeal, Defendant's counsel filed a motion to withdraw and a brief under Anders v. California, 386 U.S. 738 (1967), asserting that Defendant's plea was not knowing and voluntary. United States v. Sanchez-Sanchez, 451 F. App'x 614, 615 (8th Cir. 2012) (unpublished opinion). Defendant filed a *pro se* supplemental brief, arguing that he was sentenced "on the wrong criminal history category level" and the "wrong level according to weight."  (Doc. 174, p. 19).  The Eighth Circuit Court of Appeals found that any challenge to the voluntariness of Defendant's guilty plea was not cognizable on direct appeal because Defendant did not move to withdraw his plea in the district court. The Eighth Circuit, having reviewed the record independently under Penson v. Ohio, 488 U.S. 75 (1988), found no nonfrivoulous issues for appeal.  Accordingly defense counsel was granted leave to withdraw, and the District Court's judgment was affirmed.

On February 27, 2012, Defendant filed the instant *pro se* Motion to Vacate under 28 U.S.C. § 2255. (Doc. 174).  Defendant appears to raise the following grounds for relief: (1) the Plea Agreement was involuntary because Defendant does not speak English, and therefore, "did

-2-

not understand what was happening to him;" (2) his appointed counsel was ineffective because his counsel "failed to bring to the Judge's attention, the amount of drugs involved in this case," resulting in a greater base offense level; and 3) he was entitled to a three-level reduction for acceptance of responsibility.[1]

## I.    Plea Agreement:

Defendant asserts that his plea was not knowing and voluntary because he does not speak English, and did not understand what was in the Plea Agreement.

To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent. See Parke v. Raley, 506 U.S. 20, 28, 29 (1992) (holding that "guilty plea must be both knowing and voluntary" and must be a "voluntary and intelligent choice among the alternative courses of action" available to defendant). In seeking to ensure that the district court accepts only knowing, voluntary, and intelligent guilty pleas, Rule 11 of the Federal Rules of Criminal Procedure directs the court to conduct a colloquy with the defendant. See Fed.R.Crim.P. 11(c), (d), (f) (requiring court to advise defendant of rights he will forfeit by pleading guilty, to question defendant regarding voluntariness of his decision to plead guilty, and to satisfy itself that there is factual basis for plea). These protections notwithstanding, the Court has said that "[a] guilty plea is a solemn act not to be set aside lightly." United States v. Prior, 107 F.3d 654, 657 (8th Cir.1997).

A review of the transcript of the Change of Plea hearing shows that the Court addressed Defendant's language barrier:

---

[1]In it's Response, the Government addressed other grounds which it believed Defendant to be asserting. The undersigned construes the above listed to be the grounds actually asserted by Defendant based on a review of his §2255 Motion, his Reply to the Government's Response, and his *pro se* supplemental brief to the Eighth Circuit, which he referenced in his § 2255 Motion and attached as an exhibit thereto. The undersigned notes that Defendant also asserts that his criminal history category level should have been a II. Defendant's sentence was, in fact, calculated based upon a criminal history category level of II.

| | |
|---|---|
| THE COURT: | Now, this agreement is written in English, and I believe we determined that you don't read English. But has this agreement been translated or interpreted for you form English to Spanish? |
| INTERPRETER: | Yes. |
| THE COURT: | Did you have an interpreter help you in discussing it with Mr. Miller? |
| INTERPRETER: | You? |
| THE COURT: | Well, did you have someone to interpret the agreement when you discussed it with your attorney, Mr. Miller? |
| INTERPRETER: | Yes. |
| THE COURT: | Okay, I assume that was Ms. Andrade. |
| INTERPRETER: | Yes. |
| THE COURT: | Okay. Now, based upon that, it appears that you signed it on the last page. Did you, sir? |
| INTERPRETER: | Yes. |
| THE COURT: | Now, did you go over it carefully with Mr. Miller and with an interpreter before you signed it? |
| INTERPRETER: | Yes. |
| THE COURT: | I want to make sure you understand what's in this agreement. |
| THE DEFENDANT: | Si. |
| THE COURT: | Do you believe you do, sir? |
| INTERPRETER: | Yes. |

(Doc. 151, p. 3-4). The transcript further reveals that the Court questioned Defendant to ensure

that Defendant understood the impact of pleading guilty:

| | |
|---|---|
| THE COURT: | All right. Let's review briefly. I've asked you a series of questions here with several purposes in mind. I want to make sure that you know what you're doing, that you're not impaired or don't know what you're doing. I want to be sure that you are satisfied with the services of Mr. Miller, and you've told me several times that you are. Is that true? |
| INTERPRETER: | Yes, that's true. |
| THE COURT: | I wanted to make sure that you understand this agreement that you've made, that it was properly translated for you, and that nobody forced you to sign it, that you signed it |

-4-

voluntarily and acting on the advice of your counsel, and I am satisfied in all of those areas.

I wanted to be sure you understand the consequences that would flow from entering a guilty plea, what your punishment could be and how it would be determined and by whom, which would, of course, be me. I wanted to be sure there was a proper basis for this charge against you and to support any plea of guilty to it that you might make.

I wanted to be sure you understand that you have the right to continue with your trial, this one or a trial on this new charge, plead not guilty and make the government prove its case. I wanted you to finally understand that if you plead guilty, it would be the same as if a jury had found you guilty and there would not be any difference.

We've covered other things as well, but before I ask for your plea now, do you have any question you want to ask of me about any of these things?

| | |
|---|---|
| INTERPRETER: | Not right now, no. |
| THE COURT: | Okay. Well, this would be the time if you have questions. |
| INTERPRETER: | Yes, I do have knowledge that the drug traffic - - |
| MR. MILLER: | Judge, if it please the Court, I want to cut him off because I know that this is important information that we will have a time and a place to discuss this. |
| THE COURT: | All right. This may be something you would want to tell the probation officer in connection with preparation for sentencing, but what I want to know is if you have any confusion or anything you want to ask me about what we have done here in this hearing. Do you have any questions at all? |
| INTERPRETER: | No. It's fine, |
| THE COURT: | I then ask, sir, how do you plead to the charge set out in the Information, guilty or not guilty? |
| INTERPRETER: | Guilty. |

(Doc. 151, p. 19-21). The record revealed that an interpreter translated the Plea Agreement from English to Spanish, that an interpreter helped Defendant discuss this Plea Agreement with his counsel, and that an interpreter was present during the Change of Plea Hearing. The Court

-5-

questioned Defendant more than once about his understanding of the Plea Agreement with a certified interpreter during the Change of Plea Hearing and Defendant repeatedly answered that he was knowingly and voluntarily entering into the Plea Agreement. United States v. Ceballos, 116 F. App'x 45, 47-48 (8th Cir. 2004); United Stated v. Ruvalcaba, 9 F.3d 41, 42 (8th Cir. 1993) (defendant's "difficulty with the English language adds nothing to his argument, insofar as a duly sworn interpreter was provided at both the entry of plea and sentencing hearings"). The undersigned, therefore, sees no merit to Defendant's challenge to his guilty plea.

## II.    Ineffective Assistance of Counsel and Guideline Range:

Defendant asserts that his appointed counsel was ineffective because he "failed to bring to the Judge's attention the amount of drugs involved in this case." The Presentence Investigation Report (PSR) calculated a base offense level of 38, stating that Defendant was accountable for 2.25 kilograms of actual methamphetamine. (PSR ¶ 45). Defendant argues that his base offense level should have been a 32 or 33, as the offense conduct involved five pounds of "a mixture containing a substance of methamphetamine." (Doc. 174, pgs. 5, 7, 23, 26; Doc. 182, pg. 2). The Government argues that Defendant agreed in the stipulation of facts paragraph of the Plea Agreement that the methamphetamine seized in this case was 2.24 kilograms of a mixture that was 99% pure methamphetamine.

The United States Sentencing Guidelines § 2D1.1(c)(1) provides for a base offense level of 38 for cases involving 1.5 kilograms or more of methamphetamine (actual). As pointed out by the Government, the difference between the terms "actual methamphetamine" and "methamphetamine" is explained in note (B) to the Drug Quantity Table in §2D1.1 of The United States Sentencing Guidelines:

-6-

The terms "PCP (actual)", "Amphetamine (actual)", and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance.  For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual).  In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

A review of the Plea Agreement revealed that Defendant admitted to arranging the delivery of five pounds of methamphetamine which was determined to contain 2.24 kilograms of a mixture that was 99% pure methamphetamine.  (Doc. 115, p. 2).  Therefore, the use of a recommended base offense level of 38 was correctly applied in this case.

Defendant also argues that he should have received a three point downward adjustment for acceptance of responsibility.  (Doc. 174, p. 23).  The PSR recommended that Defendant receive no adjustment for acceptance of responsibility, citing Note 2 of §3E1.1.[2]  (PSR ¶ 51).  As indicated in the PSR, Defendant put the Government to the burden of preparing for trial and did not enter a plea of guilty until after jury selection.  (PSR ¶ 42).  As further indicated in the PSR, Defendant never fully admitted his involvement in the drug conspiracy.  This conduct is inconsistent with acceptance of responsibility.  See United States v. Jackson, 424 F. App'x 603, 605-06 (8th Cir. 2011) (Defendant did not clearly demonstrate acceptance of responsibility where he waited until the day of trial to enter a guilty plea and, even after pleading guilty, continued to maintain his innocence).

---

[2] Note 2 of §3E1.1 states the following:
This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse...

Additionally, the PSR calculated an upward adjustment of 2 points for obstruction of justice pursuant to §3C1.1.[3] (PSR ¶ 49). The PSR indicated that during the investigation, a letter was recovered wherein Defendant instructed a co-defendant to keep his mouth shut, and that if this was done, Defendant would take care of the co-defendant's family by sending money once Defendant was out of jail. (PSR ¶41). This enhancement further supports the denial of a reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1 n. 4.

Accordingly, Defendant's arguments that his counsel was ineffective because his counsel "failed to bring to the Judge's attention the amount of drugs involved" and that he was entitled to a reduction for acceptance of responsibility are meritless.

**Conclusion**

Based upon the forgoing, the undersigned recommends that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b) & (c)(2). A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998). Based upon the above analysis of Defendant's § 2255

---

[3] §3C1.1 states the following:
 If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

-8-

motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 2nd day of May, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-9-